UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES W.A.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. C23-5454-BAT

**ORDER REVERSING THE COMMISSIONER'S FINAL DECISION**

    Plaintiff appeals the ALJ's decision finding him not disabled. He contends the ALJ erroneously found at step two that his carpel tunnel syndrome ("CTS") is not a medically determinable impairment ("MDI") and his liver cirrhosis ("cirrhosis") is not a severe impairment, and that the ALJ further erred in failing to develop the record. Dkt. 12 at 1. For the reasons below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

    Plaintiff is currently sixty-three years-old, has a GED, and worked as a janitor and maintenance person at a casino. Tr. 172, 178-80. On September 24, 2020, he applied for benefits, alleging disability as of January 1, 2010. Tr. 406. His application was denied initially and on reconsideration. Tr. 71-89, 90-99. The ALJ conducted a hearing on March 24, 2022, and on

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 1

April 8, 2022, issued a decision finding Plaintiff not disabled. Tr. 170-225, 13-28. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-7.

## DISCUSSION

**A.** **Plaintiff's Carpal Tunnel Syndrome**

At step two, the ALJ declined to find Plaintiff's CTS is a MDI, on the grounds there was "no objective medical evidence during the relevant [period] that support[ed] [a CTS] diagnos[is]." Tr. 19.

Plaintiff contends the ALJ erred, and argues he was diagnosed with CTS on several occasions, including by Physicians Assistant ("PA") Eric Frevert, in October 2018, PA Jennifer Casler in December 2019, and by Dr. Grant Bludorn in November 2021. Dkt. 12 at 3-5; Tr. 618 (PA Frevert); Tr. 496 (PA Casler); Tr. 542, 553-55, 62, 183, 204 (Dr. Bludorn's records). Plaintiff also accurately notes the ALJ applied the incorrect legal standards regarding MDIs, and further argues application of the proper standards demonstrates the ALJ erred. In support, Plaintiff cites to the ALJ's subsequent acknowledgement that Dr. Bludorn's November 2021 examination revealed positive Tinel's and decreased bilateral grip strength. Tr. 21 (citing Tr. 554).

The Commissioner fails to address the ALJ's application of the wrong legal standards. Dkt. 15 at 2-5. She counters that neither PA Frevert nor PA Casler actually diagnosed CTS, but that they instead simply noted Plaintiff's complaints and his account of his prior CTS diagnoses. Dkt. 15 at 4-5. As to Dr. Bludorn, the Commissioner argues the positive Tinel's test and decreased hand strength do not themselves constitute "objective medical evidence" of a CTS

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 2

diagnosis or of functional limitations associated with CTS.[1] Dkt. 15 at 4-5.

In support of his MDI finding, the ALJ indeed erroneously cited to 20 C.F.R. sections 404.1508 and 416.908, and to Social Security Ruling ("SSR") 96-4p, none of which were in effect at the time of the ALJ's decision. Tr. 19; *see* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5868-69 (Jan. 18, 2017); *see also* Rescission of SSRs 96-3p and 96-4p ("Rescission of SSRs"), 2018 WL 3461816, at *1 (June 14, 2018).

In 2017, the regulations to which the ALJ cited, 20 C.F.R. sections 404.1508 and 416.908, were removed, revised, and relocated to 20 C.F.R. sections 404.1521 and 416.921, when the Social Security Administration ("SSA") revised the rules regarding the evaluation of medical evidence. *See* Revisions to Rules, 82 Fed. Reg. at 5868-69. Nevertheless, the substantive legal standards regarding MDIs as set forth by both the operative and removed regulations and by the operative and rescinded SSRs were nearly identical.

The operative regulations state as follows:

> Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by *objective medical evidence* from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. §§ 404.1521, 416.921 (emphasis added).[2] "Objective medical evidence," in turn, is

---

[1] The Commissioner puts the cart before the horse in arguing about the functional limitations associated with Plaintiff's CTS. The ALJ did not assess the functional limitations associated with CTS because he found Plaintiff's CTS did not constitute an MDI.

[2] The replaced 20 C.F.R. sections 404.1508, 416.908, were similar to the revised, operative regulations. While the revised regulations now state that "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," the prior

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 3

defined by 20 C.F.R. section 404.1502(f), as "signs, laboratory findings, or both."  Given the nearly identical standards, the ALJ's error in misstating the applicable regulations and SSR was harmless. [3]

However, the ALJ also erred in his *application* of the pertinent legal standards in finding Plaintiff's CTS did not constitute an MDI. In 2021 and 2022, Dr. Bludorn clearly diagnosed Plaintiff with CTS, conducted a related examination, documented positive Tinel's and reduced grip strength in both hands, and offered Plaintiff further treatment – all of which constitutes sufficient objective medical evidence to establish Plaintiff's CTS as an MDI under 20 C.F.R. sections 404.1521 and 416.921. *See* Tr. 542, 554, 626; *see also Johnson v. Saul*, 848 Fed. Appx. 703, 704-05 (9th Cir. 2021) (holding that ALJ erred in finding that Plaintiff's CTS did not constitute an MDI where physician observed that Plaintiff "had difficulty gripping small objects" and Plaintiff had a positive Tinel's test). The district court case relied on by the Commissioner is not to the contrary and is factually distinguishable. *See* Dkt. 15 at 4 (citing *Amanda H. v. Saul*,

---

regulations similarly specified that "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."  20 C.F.R. §§ 404.1508, 416.908 (removed eff. March 27, 2017); 20 C.F.R. §§ 404.1521, 416.921 (eff. March 27, 2017).

[3] Social Security Ruling 96-4p, cited by the ALJ, explained what was needed to show a medically determinable impairment.  *See* SSR 96–4p, 1996 WL 374187 (July 2, 1996). However, SSR 96-4p was rescinded in June 2018, prior to the ALJ's decision in this case, as unnecessarily duplicative of SSR 16-3p, which itself was enacted in 2016, and governs the evaluation of symptoms. *See* SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017); *see also* Rescission of SSRs, 2018 WL 3461816, at *1 ("We will apply this rescission notice on June 14, 2018.").  In rescinding SSR 96-4p, the SSA explained that SSR 96-4p was duplicative of the more recent SSR 16-3p, noting that pursuant to SSR 16-3p, the SSA "will consider symptoms and functional limitations to determine whether an impairment is severe unless the objective medical evidence alone establishes a severe MDI or combination of impairments that meets our duration requirement." Rescission of Rules, 2018 WL 3461816, at *1.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 4

2021 WL 183409, at *6 (E.D. Wash. 2021)). That case concerned an ALJ's analysis as to whether the claimant's CTS constituted a "severe impairment" – as opposed to whether the claimant's CTS satisfied the threshold MDI assessment, at issue here. *See Amanda H. v. Saul*, 2021 WL 183409, at *6. Unlike *Amanda H.*, the ALJ here did not assess the severity of Plaintiff's CTS because he concluded that Plaintiff's CTS was not an MDI. *See id.*; *cf.* Tr. 19.

Nor did Plaintiff's failure to obtain an EMG and/or to seek surgery for his CTS, as recommended by Dr. Bludorn, provide a basis for the ALJ to reject Plaintiff's CTS as an MDI given the evidence that Plaintiff lacked the insurance and the finances necessary for such procedures and treatment. *See* Tr. 183, 186, 202-05, 220; *see also Johnson*, 848 Fed. Appx. at 705 (holding that "ALJ's observation that [claimant] failed to seek treatment for his CTS" did not "provide an adequate basis for rejecting [physician's] diagnosis" of CTS and for thus concluding that the claimant's CTS did not constitute an MDI).

The ALJ's erroneous finding Plaintiff's CTS did not constitute an MDI was not harmless. As a result of the error, the ALJ failed to consider whether Plaintiff's CTS alone and/or in combination with Plaintiff's additional impairments constituted a severe impairment. The Court acknowledges Plaintiff related argument that his testimony and the medical evidence also establish that his CTS was a "severe impairment" at step two. Dkt. 12 at 8-11. The Court, however, declines Plaintiff's invitation to determine the severity of Plaintiff's CTS in the first instance, instead remanding for the ALJ to consider the severity of Plaintiff's CTS. *See* 20 C.F.R. § 404.1520(c) (An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."); SSR 85-28, Medical Impairments that are not Severe, 1985 WL 56856, at *3 (1985) ("An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality

that has no more than a minimal effect on an individual's ability to work.").

**B.    Plaintiff's Liver Cirrhosis**

Unlike Plaintiff's CTS, the ALJ found Plaintiff's cirrhosis constituted an MDI. Tr. 19. However, the ALJ proceeded to find cirrhosis (along with Plaintiff's additional MDIs) did not constitute a severe impairment at step two, thus terminating the disability analysis at step two. Tr. 19. In finding Plaintiff's cirrhosis is not severe, the ALJ acknowledged medical evidence demonstrating Plaintiff's low platelet count and elevated liver values, along with a 2021 CT revealing hepatic cirrhosis. Tr. 21 (citing Tr. 509, 511, 512) (Dr. Roland's February 2021 interpretation of CT to show "advanced hepatic cirrhosis")). However, the ALJ discounted the severity of Plaintiff's cirrhosis based on his failure to follow up with a hematologist and his primary care provider. *See* Tr. 21.

Plaintiff challenges the ALJ's step two finding his cirrhosis was not severe, pointing to the same 2021 CT scan revealing advanced hepatic cirrhosis cited by the ALJ, along with a March 2022 ultrasound documenting "cirrhotic liver morphology," that the ALJ failed to consider, and his testimony and the testimony from his sister, J.P., regarding the symptoms of his cirrhosis. Dkt. 12 at 11-16; *see* Tr. 636-37 (2022 ultrasound). Plaintiff further contends the ALJ failed to properly develop the record. Dkt. 12 at 16.

The Commissioner counters the ALJ reasonably found Plaintiff's cirrhosis non-severe because the record failed to indicate any functional limitations associated with his liver. Dkt. 15 at 5. The Commissioner further contends Plaintiff's counsel waived any argument that the ALJ should have further developed the record when counsel stated that the record was "complete" at the administrative hearing. Dkt. 15 at 7. Finally, the Commissioner notes Plaintiff failed to follow up with treatment and to comply with agency requests for information and for a

consultative examination. Dkt. 15 at 8.

The record suggests Plaintiff may have failed to respond to requests for information from the SSA during the administrative proceedings. *See* Tr. 233 (April 2021 initial disability determination). However, the administrative record here does not include the actual, referenced SSA requests for information; and it is also unclear regarding the date of those requests and the status of Plaintiff's representation at the time. In light of the uncertain record, the Court declines to find Plaintiff waived his argument regarding the necessity of further development of the record. Nor does Plaintiff's counsel's statement that the record was "complete" at the beginning of hearing have absolved the ALJ of his independent duty to develop the record, to the extent that further development was required. Tr. 175; *see, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.").

The ALJ erred when he failed to consider the March 2022 ultrasound regarding Plaintiff's cirrhosis. *See* Tr. 21 (discussing earlier CT). That ultrasound, along with the additional medical evidence regarding Plaintiff's cirrhosis, including the 2021 CT, established more than a "slight abnormality" or "slight" medical impairment. *See* SSR 85-28, 1985 WL 56856, at *3; *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (noting that the purpose of step two is to identify claimants "whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account"); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (explaining that a step two impairment "may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work"); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)

(noting "the step-two inquiry is a de minimis screening device to dispose of groundless claims"); *see also* Tr. 636-37, 509-12. Given the ALJ here terminated his disability analysis at step two, this error cannot be considered harmless. Accordingly, remand is necessary for the ALJ to proceed to steps three through five of the requisite sequential analysis regarding Plaintiff's cirrhosis.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall evaluate the severity of Plaintiff's CTS at step two and proceed to the additional steps of the sequential analysis that are necessitated by that evaluation. Additionally, the ALJ is required to evaluate Plaintiff's cirrhosis, which constitutes a severe impairment, at steps three through five of the sequential analysis, and, in doing so, to further develop the record, as warranted. Finally, in the event that the ALJ finds Plaintiff is disabled, the ALJ is also required to consider on remand the materiality of Plaintiff's DAA. *See* Dkt. 15 at 6 n.6.

DATED this 15th day of November, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge

Judge